# EXHIBIT 1

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Esq
16320 Murphy Road
Sonora, CA 95370
Tel. (412) 370-9110
bobmackeyesq@aol.com
CA Bar No. 125961

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio, Esquire (*motion for pro hac vice forthcoming*)
nmigliaccio@classlawdc.com
Jason S. Rathod, Esquire (*motion for pro hac vice forthcoming*)
jrathod@classlawdc.com
412 H Street NE, Suite 302
Washington, DC 20002
Tel: (202) 470-3520

**ROBERT PEIRCE & ASSOCIATES, P.C.**
D. Aaron Rihn, Esquire (*motion for pro hac vice forthcoming*)
arihn@peircelaw.com
Sara J. Watkins, Esquire (*motion for pro hac vice forthcoming*)
swatkins@peircelaw.com
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229
*Counsel for Plaintiff*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| Kerry Lamons, on behalf of herself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GLANBIA PERFORMANCE NUTRITION (NA), INC., a corporation, d/b/a Optimum Nutrition and BSN and DOES 1 Through 100, Inclusive,<br><br>　　　　Defendants. | Case No:  CVRI2300961<br><br>UNLIMITED CIVIL CASE<br><br>CLASS ACTION COMPLAINT:<br><br>1.　Against all Defendants for Breach of Express Warranty<br>2.　Against all Defendants for Breach of Implied Warranty of Merchantability<br>3.　Against all Defendants for Common Law Fraud<br>4.　Against all Defendants for Violations of California's False Advertising Law, California Business & Professions Code §§ |

17500 et seq.

5. Against all Defendants for Violations of California Song-Beverly Consumer Warranty Act for Breach of Express Warranty, Cal. Civ. Code §§ 1790-1795.8

6. Against all Defendants for Violations of the Song-Beverly Consumer Act for Breach of Implied Warranty, Cal. Civ. Code §§ 1790-1795.8

7. Against all Defendants for Violations of the California Legal Remedies Act Cal. Civ. Code §§ 1750—1785 ("CLRA")

8. Against all Defendants for Violations of the California Unfair Competition Law, Cal. Civ. & Prof. Code §§ 17200-17210 ("UCL")

9. Against all Defendants for Unjust Enrichment

JURY TRIAL DEMANDED.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 2

JURISDICTION, VENUE AND GOVERNING LAW ................................... 6

THE PARTIES ................................................................................................... 7

    A.    Plaintiff ................................................................................................. 7

    B.    Defendants ........................................................................................... 7

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION ..................... 8

CLASS ACTION ALLEGATIONS ................................................................ 13

ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS ............................................................................................. 16

FIRST CAUSE OF ACTION .......................................................................... 17

SECOND CAUSE OF ACTION ..................................................................... 19

THIRD CAUSE OF ACTION ........................................................................ 21

FOURTH CAUSE OF ACTION ..................................................................... 23

FIFTH CAUSE OF ACTION .......................................................................... 25

SIXTH CAUSE OF ACTION ......................................................................... 26

SEVENTH CAUSE OF ACTION ................................................................... 28

EIGHTH CAUSE OF ACTION ...................................................................... 31

NINTH CAUSE OF ACTION ........................................................................ 34

PRAYER FOR RELIEF .................................................................................. 35

DEMAND FOR JURY TRIAL ....................................................................... 35

CLASS ACTION COMPLAINT

Plaintiff Kerry Lamons ("Plaintiff Lamons" or "Ms. Lamons"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, brings this action against Glanbia Performance Nutrition (NA), Inc. d/b/a Optimum Nutrition and BSN (hereinafter "Glanbia" or "Defendant") and Does 1 through 100 (collectively referred to as "Defendants"). Plaintiff alleges violations of the Unlawful and Deceptive Trade Practices Act (California Business and Professions Code §§ 17200, *et seq.*) ("UCL"), Consumers Legal Remedies Act (California Civil Code §§ 1750, *et seq.*) ("CLRA"), and the Song-Beverly Consumer Warranty Act ("California Civil Code §§ 1790, *et seq.*) (the "Act"), and also brings claims for breach of express warranty, breach of implied warranty of merchantability, common law fraud, and unjust enrichment on behalf of all others similarly situated. The following allegations are based upon information and belief, including personal knowledge as to her own acts and experiences and upon the investigation conducted by counsel as to all other allegations:

## **<u>INTRODUCTION</u>**

1.      Plaintiff brings claims against Glanbia and Does 1 through 100 as a class action, and does so on behalf of herself and all putative members of the "Class" (defined below).

2.      This action arises from the deceptive trade practices of Defendants in its manufacture and sale of nutritional powders containing branched-chain amino acids labeled "BSN" and "Optimum Nutrition", lines, respectively labeled "BSN AMINOx" and "Optimum Nutrition Essential Amino Energy" and its advertisements representing that such BSN products contain "0 Calories" while the Optimum Nutrition contain only "5 Calories." The BSN AMINOx line of products includes Fruit Punch, Blue Raspberry, Watermelon, Grape, EAAs- Jungle Juice, EAAs- Purple People Eater, EAAs-Strawberry Dragonfruit, EAAs-Watermelon Splash, and EAAs-White Bark Raspberry flavors and is marketed as a "Keto Friendly," "Sugar Free" product meant to support "muscle recovery and endurance." The Optimum Nutrition Essential Amino

Energy line of products includes Blue Raspberry, Blueberry Lemonade, Blueberry Mojito, Concord Grape, Cotton Candy, Fruit Fusion, Green Apple, Juicy Strawberry, Lemon Lime, Orange, Peach Lemonade, Pineapple, Strawberry Lime, Watermelon and Wild Berry. Moreover, BSN AMINOx and Optimum Nutrition Essential Amino Energy are sub-brands of the broader Glanbia portfolio of numerous like products, including "Optimum Nutrition Instantized BCAA 5000," "Optimum Nutrition Amino Energy + Electrolytes," "Optimum Nutrition Superior Amino 2222," and several dozen SKUs (collectively, the "Product"), all of which are purposely misbranded for Calorie content, most positioning "0" Calories or implying the same through the omission of the term "Calories" from the nutritional label or claiming only "5 to 10 Calories Per Serving with Zero Sugar." Meanwhile, the actual Caloric range for the Product amounts to ***35 to 55 Calories*** depending on formulation and use guidance, which can include multiple servings per day.

3.      Defendants' representations and omissions regarding the number of Calories in the Product(s), including on its labels, webpages and other marketing and advertising media and materials, is purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because Defendants knowingly provide non-factual information and omit relevant information in an attempt to deceive and entice sales to these consumers who are seeking to purchase "0 Calorie" and low-Calorie products conducive to weight loss and control.

4.      Title 21 of the Code of Federal Regulations relating to nutritional labeling of food states that Calories are to be expressed to the nearest 5-Calories on labels. *See* 21 CFR 101.9(c)(1). The Food and Drug Administration ("FDA") guidance relating to nutritional labeling of food describes several methods for estimating Calories in 21 CFR § 101.9(c)(1)(i). Of

these methods, only five are relevant to the Product. These methods include (1) calories based on a per gram measurement of protein, fat, and carbohydrates of specific foods and other ingredients (this method is known as the Atwater Method); (2) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrates, and total fat, respectively; (3) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrates, and total fat, respectively, but then subtracting two calories per gram for non-digestible carbohydrates and between zero and three calories per gram of sugar alcohols; (4) using data for specific food factors for particular foods or ingredients approved by the FDA; and (5) using bomb calorimetry data. *See* 21 CFR § 101.9(c)(1)(i).

5.     Furthermore, per the FDA, Calories are a "Third Group" nutrient, which means they are nutrients associated with health concerns. Accordingly, like saturated fat, cholesterol, sodium, and other Third Group nutrients, the actual Calorie level/serving must not exceed greater than 20% of the labeled claim. *See* 21 CFR 101.9(g)(5)). Further, if Calories are stated in the Supplement Facts panel, actual Calories cannot be >20% of that labeled number, pursuant to 21 CFR 101.9(g)(5).

6.     Plaintiff conducted independent Calorie calculation testing of the Product, which testing revealed that the Product contained approximately 356 Calories per 100 grams. Assuming a serving size of 9.5 grams, each serving contains approximately 34 Calories, significantly more than the "5 Calories" advertised. Thus, consumers in the state of California, such as Plaintiff, have been, and continue to be, misled into purchasing Defendants' nutritional powders with the belief that they do not contain more than the "5 Calories" stated.

7.     Plaintiff has analyzed the Product and evaluated it in accordance with each of the five methods provided by the FDA regulations and has concluded that every one of the five

-4-
COMPLAINT

methods' results yield a calorie value that exceeds the claims on the Product's label by more than twenty percent (20%).

8.  Defendants' product representations are in direct violation of FDA guidance for labeling Calories when present at levels at or above 5 Calories/serving (*see* 21 CFR § 101.9(c)). The FDA requires marketers to declare Calories and Calorie-containing nutrients within the Nutrition Facts and Supplement Facts if they are determined to be in significant amounts. Moreover, in accordance with 21 CFR 101.60(a)(4), dietary supplements may only make nutrient content claims related to Calories when there are less than 5 Calories per labeled serving.

9.  The FDA provides a clear (high resolution) example of labeling Calories for an amino acid-based supplement via https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 Calories and is listed as 15 based on rounding rules. The full FDA label set is included in **Appendix 1**. These labeling examples provided by the FDA remove any possibility of misunderstanding the guidance given as such guidance pertains to this Complaint. The relevant example provided by the FDA is as follows:

## Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

**Amount Per Tablet**

| | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

* Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

10.     Nonetheless, Defendants continued to sell their products with misleading labels, despite knowing the inaccuracy of such representations. Defendants chose, and continue to choose financial gain at the expense of consumers by concealing and omitting disclosure of this critical misrepresentation to consumers who, like Plaintiff, purchased the Product based specifically upon this "0" and low-Calorie representation, for purposes of lean muscle development and weight control.

11.     Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements of caloric content established by FDA regulations.

### JURISDICTION, VENUE, AND GOVERNING LAW

12.      This action is brought by Plaintiff pursuant to, *inter alia*, the California Civil Code section 1750 and California Business and Professions Code sections 17200, *et seq.* Plaintiff and Defendants are "persons" within the meaning of the California Business and Professions Code, section 17201.

13.     The injuries, damages and /or harm upon which this action is based, occurred, or arose out of, activities engaged in by Defendants within, affecting, and emanating from, the State of California.

14.     Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in Riverside County.

15.     In accordance with California Civil Code Section 1780(d), Plaintiff files herewith a declaration attached as **Exhibit A** presenting facts showing that this action is being commenced in a county that is a proper place for trial.

16.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## THE PARTIES

**A. Plaintiff**

17.     Plaintiff Kerry Lamons is a citizen and resident of Indio, California in Riverside County. Beginning on or around September 6, 2021, Plaintiff purchased the Product from Vitamin Shoppe's website after viewing pictures of its label and other marketing materials, all of which claimed to contain only "5 Calories," leading her to believe that the Product contained 5 Calories. However, independent testing demonstrated that the Product contained substantially more Calories than Defendants advertised on the Product's label.

18.     Plaintiff reserves the right to seek leave to amend the within Class Action Complaint to add new Plaintiffs, if necessary, in order to establish suitable representative(s).

19.     At no point, either during Plaintiff Lamons' research about the Product or at the point of sale, did Defendants ever disclose that the Product actually contained significantly more Calories than the "5 Calories" it inaccurately advertised.

**B. Defendants**

20.     Plaintiff is informed and, based upon information and belief, alleges that Defendant, Glanbia, is a corporation with its principal office in the state of Illinois that makes and distributes health supplements, energy drinks, and nutritional protein powders throughout the United States and, specifically, to consumers in numerous counties throughout the State of California, including in Riverside County.

21.     Plaintiff does not currently know the true names or capacities of the persons or entities sued herein as Does 1-100, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff and the Class, as alleged herein. Plaintiff will amend this

Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with the appropriate charging allegations, as may be necessary.

22.     At all times mentioned herein, the Defendants named as Does 1-100, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured a significant number of the Plaintiff and the Class in the State of California.

23.     Defendants' Product is sold on their website and through retailers including Walmart, Vitamin Shoppe and others and is purchased by consumers for personal use and consumption in the State of California.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
### *THE SALE OF UNHEALTHY, CALORIE-LADEN PROTEIN POWDERS AS A DECEPTIVE TRADE PRACTICE*

24.     Each of the preceding paragraphs is incorporated by reference herein.

25.     Advertisements, packages, and labels should provide consumers with accurate information as to the nature and quality of a product's contents and should assist in making informed decisions. When a company misrepresents material information about a product, it is deceptive and misleading to reasonable consumers.

26.     On the websites where the Product is sold, including Defendants' own Optimum Nutrition and BSN websites, along with others like Walmart, Amazon, and Vitamin Shoppe, Defendants prominently advertise details of the Product, including touting its having less than 10 Calories, or in the case of the BSN line of products, omitting any reference to Caloric content, implying no Calories are present.[1] These digital marketing claims for the Product alongside images on the Product's label, which can be viewed below, mislead consumers to believe that the

---

[1] See BSN- Product Page; Optimum Nutrition- Product Page; Vitamin Shoppe- ON Product Page; Vitamin Shoppe-BSN Product Page; Walmart- ON Product Page; Walmart- BSN Product Page; Amazon-ON Product Page; Amazon-BSN Product Page; BodyBuilding.com-Product Page

product contains "5 Calories" by direct representations of such or "0 Calories" by omission. In fact, the nutritional labels affixed to each Product, whose images appear as key advertising agents on retailer websites, clearly states "5 Calories" per for the Optimum Nutrition products and purposefully excludes a section for Calorie content in BSN products. These misrepresentations and omissions clearly represent to consumers that the Calories in the Product are very low or, in the case of BSN products, do not exist, where omission of any mention of Calories indicates they constitute an irrelevant nutritional factor.

## Supplement Facts

Serving Size 9.5 g (About 2 Scoops)
Servings Per Container 72

| | Amount Per Serving | %Daily Value |
|---|---|---|
| Calories | 5 | |
| Total Carbohydrate | 1 g | <1%† |
| Magnesium | 60 mg | 14% |
| Chloride | 190 mg | 8% |
| Sodium | 110 mg | 5% |
| **Amino Blend** | 5 g | ** |
| Micronized Taurine, Micronized L-Glutamine, Micronized L-Arginine, Micronized L-Leucine, Beta-Alanine, Micronized L-Citrulline, Micronized L-Isoleucine, Micronized L-Valine, Micronized L-Tyrosine, Micronized L-Histidine, Micronized L-Lysine Hydrochloride, Micronized L-Phenylalanine, Micronized L-Threonine, Micronized L-Methionine | | |
| **Electrolyte Blend** | 440 mg | ** |
| Sodium Chloride, Magnesium Oxide, Potassium Chloride | | |
| Caffeine‡ | 100 mg | ** |
| Green Tea Leaf Extract | 50 mg | ** |
| Green Coffee Bean Extract | 10 mg | ** |

†Percent Daily Values are based on a 2,000 calorie diet.
**Daily Value not established.

**OTHER INGREDIENTS:** Natural and Artificial Flavor, Malic Acid, Citric Acid, Calcium Silicate, Silicon Dioxide, Sucralose, Gum Blend (Guar Gum, Gum Acacia, Xanthan Gum), Tartaric Acid, Beet Juice Powder (color), Sunflower and/or Soy Lecithin, Inulin.

**CONTAINS: SOY.**



## ESSENTIAL AMIN.O. ENERGY + ELECTROLYTES

★ ★ ★ ★ ½  (24)

- ✓ Energy + Muscle Recovery + Electrolytes
- ✓ Dial Up your Energy Level - Customize your Caffeine Level to Support your Daily Routine
- ✓ 100 mg of Caffeine per Serving Derived from Natural Sources Like Coffee Bean and Tea Leaf
- ✓ 5 Grams of Amino Acids per Serving for Muscle Recovery
- ✓ 405-410 mg of Electrolytes per Serving to Help Replenish What's Lost with Sweat (when taken with at least 10 fluid ounces of water)
- ✓ Available in 4 delicious flavors including NEW Strawberry

### PRODUCT OVERVIEW ⌃

**Energy + Muscle Recovery + Electrolytes**

Mix up ESSENTIAL AMIN.O. ENERGY + ELECTROLYTES anytime you want a boost of energy, muscle recovery and electrolyte support. Each serving provides 100 mg of caffeine from natural sources to support energy and focus along with 5 grams of amino acids for muscle recovery support—plus electrolytes to help replace what's lost through sweat.[1]

### BENEFITS ⌃

- ✓ Dial Up your Energy Level - Customize your Caffeine Level to Support your Daily Routine
- ✓ Supports Energy, Focus & Muscle Support
- ✓ 100 mg of Caffeine per Serving Derived from Natural Sources Like Coffee Bean and Tea Leaf
- ✓ 5 grams of Amino Acids per Serving to Support Muscle Recovery
- ✓ Electrolytes to Help Replenish What's Lost Through Sweat (when taken with at least 10 oz water)
- ✓ Available in 4 delicious flavors including NEW Strawberry









1.      Despite Defendant's misleading representations and omission of Calories on every Product's label, independent laboratory testing has revealed that the Optimum Nutrition Product actually contains approximately 356 Calories per 100 grams. Assuming a serving size consists of 9.5 grams as is indicated by the Product's nutritional label, each serving contains approximately 34 Calories, far more Calories than the "5 Calories" represented on the Product's packaging and from Defendants' advertising and promotional materials. Independent laboratory testing has similarly revealed that the BSN Product actually contains approximately 378 Calories per 100 grams. Assuming a serving size consists of 14.5 grams as is indicated by the Product's nutritional label, each serving contains approximately 55 Calories, far more Calories than the "0

Calories" implied by omission on the Product's packaging and from Defendant's advertising and promotional materials.

27.     Defendants' sale of the Product deceives consumers, such as Plaintiff, because the package is materially misleading in that it includes no Caloric information and, therefore, in violation of FDA regulations, indicates the absence of any Calories per serving of its contents.

28.     Defendants' sale of the Product is deceptive to reasonable consumers, including Ms. Lamons who, in consideration of their health and fitness goals, are in the market for 0 and low-Calorie products, because there is no practical way for them to know, prior to purchase and consumption, that the Product is laden with Calories despite being marketed as containing none or less than 10 Calories per serving.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this lawsuit on behalf of herself, and all other persons similarly situated, pursuant to California Code of Civil Procedure § 382. The Proposed Class is defined as follows:

**The Class**:

> All persons in California who are current or former users of the Product and other Products in the line of BCAA Products in the past four years.

30.     The Class is also referred to collectively herein as the "Proposed Class."

31.     Excluded from the Proposed Class are Defendants' officers, directors, legal representatives, successors, and assigns; any entity in which Defendants have a controlling interest; and judicial officers to whom this case is assigned and their immediate family members.

32.     Plaintiff reserves the ability to modify the definition of the Proposed Class before the Court determines whether class certification is warranted.

33.     *Numerosity*: The Proposed Class consists of tens of thousands of consumers who have purchased the Product, making joinder of each Proposed Class member impracticable. The Proposed Class is presently ascertainable by reference to records in the possession of Defendants.

34.     *Commonality and Predominance*: Common questions of law and fact exist for each of the causes of action and predominate over questions affecting only individual Proposed Class members. Questions common to the Proposed Class include:

A.  The nature, scope, and operation of Defendants' wrongful practices;

B.  The uniformity of the advertisements created through Defendants' marketing materials;

C.  Whether Defendants misrepresented and omitted the number of Calories in the Product;

D.  Whether Defendants engaged in fraudulent practices as to Plaintiff and Class members;

E.  Whether Defendants violated state consumer protection laws by misrepresenting and concealing the number of Calories in the Product;

F.  Whether Defendants' conduct amounts to violations of the CLRA;

G.  Whether Defendants deliberately misrepresented to, and omitted material facts from, Plaintiff and Class members;

H.  Whether members of the Class may be notified and warned about the contents of the Product and have the entry of final and injunctive relief compelling Defendants to stop their misrepresentations; and,

I.  Whether Plaintiff and the Class suffered damages because of Defendants' misconduct and, if so, the proper measure of damages.

35.     *Typicality*: Plaintiff's claims are typical of the claims of the members of the Proposed Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting, and selling the Product. All of Plaintiff's

claims are typical of the claims of the Proposed Class since Plaintiff and all Proposed Class members were injured in the same manner by Defendants' uniform course of conduct described herein.  Plaintiff and all Proposed Class members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Proposed Class members. Plaintiff and all Proposed Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendants' course of conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Proposed Class members.

36.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the members of the Proposed Class and has no interests antagonistic to those of the Proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

37.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Proposed Class is impracticable, and the amount at issue for each Proposed Class member would not justify the cost of litigating individual claims. Should individual Proposed Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this

class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

38.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

39.     Defendants have acted, and refused to act, on grounds generally applicable to the Proposed Class, thereby making appropriate final equitable relief with respect to the Proposed Class as a whole.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

40.     Defendants have possessed exclusive knowledge about the number of Calories contained in the Product, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of engineers, all of which is unavailable to Plaintiff and the proposed Class members.

41.     Throughout the time period relevant to this action, Defendants concealed the contents of the Product. As a result, neither Plaintiff nor the absent Class members could have discovered the number of Calories actually contained in the Product, even upon reasonable exercise of diligence.

42.     Despite their knowledge of the above, Defendants (a) failed to disclose, (b) concealed, and (c) continue to conceal critical information relating to the Product's Caloric content, even though, at any point in time, they could have communicated this material information to Plaintiff and the Class through individual correspondence, media releases, or other means.

43.     Plaintiff and Class members relied on Defendants to disclose the number of Calories in the Product because the contents could not be discovered through reasonable efforts by Plaintiff and Class members.

44.     Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and Class members have against Defendants as a result of Defendants' misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

45.     Defendants were under a continuous duty to Plaintiff and Class members to disclose the true nature, quality, and character of its Product. However, Defendants concealed the true nature, quality, and character of the Product, as described herein. Based upon the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

46.     Defendants knew about the number of Calories contained in the Product for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendants maintained exclusive control over information concerning the number of Calories in the Product. Based upon the foregoing, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise apply to the claims asserted by Plaintiff herein.

## FIRST CAUSE OF ACTION
### (Against all Defendants for Breach of Express Warranty)

47.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

48.     Plaintiff brings this claim individually and on behalf of the Proposed Class.

49.     Defendants are "merchant[s]" and "seller[s]" as those terms are defined under the Uniform Commercial Code ("U.C.C.") and by the respective state statutes under which Plaintiff alternatively pleads this claim. *E.g.*, Cal. Comm. Code §§ 2103 and 2104.

50.     Plaintiff and Class members were "buyers" of "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiff alternatively asserts this claim. *E.g.*, Cal. Code §§ 2103.

51.     "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(a)(1).[2]

52.     Defendants created an express warranty within the meaning of the U.C.C. and the respective state statutes under which Plaintiff alternatively asserts this claim.

53.     Defendants extended express warranties that the Product contained "5 to 10 Calories" or no Calories at all to consumers, including Plaintiff and the Proposed Class, by way of the product label, product descriptions and representations as to product qualities and characteristics, on their websites (and other third-party websites), and via advertisements, among other methods as detailed herein. These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

54.     Plaintiff and Class members reasonably and justifiably relied on Defendants' express warranty when purchasing the Product.

55.     Defendants breached these warranties by selling the Product knowing it contained substantially more than the warranted "5 to 10 Calories" as set forth in detail herein.

56.     As a direct result of this breach, Plaintiff and other consumers, in fact, did not receive goods as warranted by Defendants.

---

[2] The statutory provisions adopting these provisions of the U.C.C. for California can be found at Cal. Com. Code §§ 2313, 10210.

57.     As a proximate result of this breach of warranty by Defendants, Plaintiff and other consumers have suffered damages, injury in fact, and ascertainable loss in the amount to be determined at trial.

## SECOND CAUSE OF ACTION

**(Against all Defendants for Breach of Implied Warranty of Merchantability)**

58.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

59.     Plaintiff brings this claim individually and on behalf of the Proposed Class.

60.     Defendants sold the Product to Class members under implied warranties of merchantability and fitness. Defendants impliedly warranted the Product to be merchantable, fit for the ordinary purposes for which they were intended to be used (including the guarantee that they were in a safe and non-defective condition for use by their purchasers for the ordinary purpose for which they were intended and were not otherwise injurious). Defendants are under a duty to design, manufacture, label, and test the Product to make it suitable for the ordinary purposes of their use—a dietary supplement that "supports muscle endurance" and recovery.

61.     Defendants breached their implied warranties for the Product by failing to disclose the true number of Calories contained in the Product and otherwise inadequately marketing the product as a dietary supplement that would not hinder weight loss and maintenance goals.

62.     In breach of Defendants' implied warranties, the Product is defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

63.   Defendants are and were, at all relevant times, "merchants" and sellers of nutritional supplements within the meaning of the Uniform Commercial Code and relevant state law.[3]

64.   The Product is and was, at all relevant times, a "good" within the meaning of the Uniform Commercial Code and by the respective state statutes under which Plaintiff alternatively brings this claim, including the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.* and the Consumer Legal Remedies Act, Cal. Civ. Code § 1761(a).

65.   A warranty that the Product was in merchantable condition and fit for the ordinary purpose for which such nutritional supplemental powders are used is implied by law under the Uniform Commercial Code and relevant state law.

66.   Defendants knew, or had reason to know, of the specific use for which the Product would be purchased and used. Plaintiff and the Class were promised a dietary supplement that would not only contain a maximum of "5 to 10 Calories" and be conducive to weight loss and management, but also that would be adequately labeled, pass without objection in the trade, and be fit for the ordinary purposes for which dietary supplement powders are used.

67.   Defendants knew that the Product would and did pass unchanged from the authorized manufacturers to Plaintiff and members of the Class, with no indication of the true Caloric content of the Product.

68.   Defendants provided Plaintiff and Class members with an implied warranty that the Product was merchantable and fit for the ordinary purposes for which they were sold.

69.   This implied warranty included, among other things, a warranty that Defendants manufactured, supplied, distributed, and/or sold the Product with consumers in mind who would

---

[3] The relevant state statutory provisions for the California can be found at Cal. Com. Code §§ 2314, 10212.

be seeking low-Calorie or Calorie-free products for reasons of weight, health, and fitness management.

70.    Contrary to the applicable implied warranties, the Product at the time of sale and thereafter was not fit for its ordinary and intended purpose in that it, in fact, contained far more than the "5 to 10 Calories" Defendants represented to consumers through its omissions. Such action breached the implied warranty that the Product was of merchantable quality and fit for such use, in violation of the Uniform Commercial Code and relevant state law.

71.    Defendants have been on notice of these misrepresentations and/or omissions through, upon information and belief, their own internal research and development process. Defendants have had the opportunity to correct the number of Calories in the Product or correct their misrepresentations but have chosen not to do so. When confronted with the allegations herein, Defendants elected to continue to sell their Product without disclosing their omissions.

72.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

73.    Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Product, overpayment, or loss of the benefit of the bargain.

**THIRD CAUSE OF ACTION**
**(Against all Defendants for Common Law Fraud)**

74.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

75.    Plaintiff brings this claim individually and on behalf of the Proposed Class.

76.     Defendants committed fraud by (i) failing to disclose and (ii) actively concealing, at the point of sale of the Product to Plaintiff and otherwise, that the Product contains more than the alleged "5 to 10 Calories." Through their own website (and other third-party websites) and other marketing materials, Defendants concealed the truth about the Product, intending for Plaintiff and the Class to rely upon Defendants' representations and/or omissions—which they did.

77.     A reasonable consumer would not have expected the Product to contain the Caloric content described herein. Plaintiff and the members of the Class did not know of the facts which were concealed from them by Defendants. Moreover, as consumers, Plaintiff and the members of the Class did not, and could not, unravel the deception on their own. Defendants omitted information about the Calorie content on their websites and marketing materials.

78.     Defendants had a duty to disclose Caloric information because the true facts were known and/or accessible only to them and because they knew these facts were not known or reasonably discoverable by Plaintiff or the members of the Class.

79.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Class have been harmed in that they purchased the Product when they otherwise would not have, paid more for the Product than they otherwise would have, and are left with a Product of diminished value and utility because of the defect. Meanwhile, Defendants have sold more of the Product than they otherwise would have and charged inflated prices for the Product, thereby unjustly enriching themselves.

80.     Based on the foregoing, Plaintiff is entitled to all remedies available, including refunds, actual damages, liquidated damages, punitive damages, attorney fees and other reasonable costs. Plaintiff and Class members request that the Court award equitable relief,

including an order requiring Defendants to adequately disclose Calorie content of the Product and an order enjoining Defendants from selling the Product without disclosing this information in the future.

81.     Defendants' acts and omissions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and the Class; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to punish them and deter such conduct in the future, which amount shall be determined according to proof at trial.

## FOURTH CAUSE OF ACTION

### (Against all Defendants for Violations of California's False Advertising Law, California Business & Professions Code §§ 17500 et seq.)

82.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

83.     Plaintiff brings this claim individually and on behalf of the Proposed Class.

84.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Product.

85.     Defendants made representations and statements (by omission and commission) that led reasonable consumers to believe that the Product was fit for their intended purpose, to aid in muscle development, maintenance, and repair without adding excessive Caloric intake. Defendants deceptively failed to inform Plaintiff and Class members, that the Product was, in fact, laden with Calories far greater than the Calorie-free product represented by Defendants.

86.     Plaintiff and those similarly situated relied, to their detriment, on Defendants' false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and those

similarly situated been adequately informed and not intentionally deceived by Defendants through Defendants' false representations and omissions, they would have acted differently by, without limitation, refraining from purchasing the Product or paying less for it.

87.   Defendants' acts and omissions are likely to deceive the general public.

88.   Defendants engaged in these false, misleading, and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

89.   The aforementioned practices also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

90.   As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a price premium for the Product, *i.e.*, the difference between the price they paid for the Product and the price they would have paid but for Defendants' misrepresentations and omissions.

91.   Plaintiff seeks, on behalf of herself and those similarly situated, restitution of the difference between what Defendants acquired from Plaintiff, the general public, and/or the Class, and what would have been acquired in absence of the false, misleading, and deceptive advertising and marketing practices complained of herein, which amount will be proven at trial, plus interest thereon.

92.     Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices constitute false, misleading, and deceptive advertising.

93.     Defendants, unless and until enjoined and restrained by this Court, will continue to cause injury in fact to the general public in the loss of money and property and Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to seek legal redress repeatedly and continuously in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff and the members of the Class have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**FIFTH CAUSE OF ACTION**

**(Against all Defendants for Violations of California Song-Beverly Consumer Warranty Act for Breach of Express Warranty, Cal. Civ. Code §§ 1790-1795.8)**

94.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

95.     Plaintiff brings this claim individually and on behalf of the Proposed Class.

96.     Plaintiff and the Proposed Class members who purchased the Product are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

97.     The Product is a "consumer good" within the meaning of Cal. Civ. Code § 1791(a).

98.     Defendants are "manufacturer[s]" of the Product within the meaning of Cal. Civ. Code. § 1791(j).

99.     Defendants made express warranties to Plaintiff and the Proposed Class within the meaning of Cal. Civ. Code. §§ 1791.2 and 1793.2(d).

100.    Defendants breached these express warranties by representing and selling the Product as containing a maximum of " 5 to 10 Calories," despite knowing it contained far more than the alleged "5 to 10 Calories."

101.    Defendants have failed to promptly replace or buy back the Product from Plaintiff and the Proposed Class as required under Cal. Civ. Code. § 1793.2(d)(2).

102.    As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff and the Proposed Class received the Product in a condition that substantially impairs its value to Plaintiff and the other Class members. Plaintiff and the Proposed Class members have been damaged as a result of, among other things, overpaying for the Product, the diminished value of the Product, and the Product's hidden Calorie content.

103.    Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff and the Proposed Class are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Product and the overpayment or diminution in value of the Product.

104.    Pursuant to Cal. Civ. Code § 1794(d) and (e), Plaintiff and the Proposed Class are entitled to reasonable costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

**(Against all Defendants for Violations of the Song-Bervely Consumer Act for Breach of Implied Warranty, Cal. Civ. Code §§ 1790-1795.8)**

105.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

106.    Plaintiff brings this claim individually and on behalf of the Proposed Class.

107.    Plaintiff and the Proposed Class members who purchased the Product are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

108.    The Product is a "consumer good" within the meaning of Cal. Civ. Code § 1791(a).

109.    Defendants are "manufacturer[s]" of the Product within the meaning of Cal. Civ. Code § 1791(j).

110.    Defendants impliedly warranted to Plaintiff that the Product was "merchantable" within the meaning of Cal. Civ. Code §§ 1791.2 and 1792.

111.    Section 1791.1(a) provides that "[i]mplied warranty merchantability" or "implied warranty that goods are merchantable" means that the consumer goods must meet each of the following:

    a.  Pass without objection in the trade under the contract description;

    b.  Are fit for the ordinary purposes for which such goods are used;

    c.  Are adequately contained, packaged, and labelled; and,

    d.  Conform to the promises or affirmations of fact made on the container or label.

112.    The Product was represented and sold to consumers as a nutritional supplement powder that contained a maximum of "5 to 10 Calories," meant to aid in the development of muscle mass without hindering weight loss and health goals as they relate to Calorie intake.

113.    Because the Product, in fact, as detailed herein, contains substantially more than "5 to 10 Calories," it is not fit for the ordinary purposes for which such supplements are used.

114.    The Product is not adequately labelled because the labelling fails to disclose accurate Calorie content and does not advise the Proposed Class of the same.

115. The Product, thus having more than the promised "5 to 10 Calorie" maximum deprived Plaintiff and the Proposed Class of the benefit of their bargain and has resulted in the Product being worth less than what Plaintiff and members of the Proposed Class paid.

116. As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiff and the Proposed Class received the Product in a condition that substantially impairs its value to Plaintiff and the other Class members. Plaintiff and Class members have been damaged because they purchased a Product they otherwise would not have, paid more for the Product than they otherwise would have, and are left with a Product of diminished value and utility because of the number of Calories it actually contains.

117. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and the Proposed Class are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Product, overpayment, or loss of benefit of the bargain.

118. Pursuant to Cal. Civ. Code § 1794(d) and (e), Plaintiff and the Proposed Class are entitled to reasonable costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### (Against all Defendants for Violations of the California Legal Remedies Act Cal. Civ. Code §§ 1750—1785 ("CLRA"))

119. Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

120. Plaintiff brings this claim individually and on behalf of the Proposed Class.

121. Defendants are "person[s]" within the meaning of the Cal. Civ. Code § 1761(c).

122. Plaintiff and other Class members are "consumers" as defined under Cal. Civ. Code § 1761(d).

123. The Product is a "good" as defined under Cal. Civ. Code § 1761(a).

124. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

125. Defendants engaged in unfair and/or deceptive acts in violation of the CLRA principally because they intentionally or negligently concealed and suppressed material facts concerning the actual Calorie content of the Product. Defendants accomplished this by explicitly representing that the Calories were nonexistent in the Product and by failing to disclose accurate Calorie content in other marketing and Product labelling. Defendants' conduct violated the CLRA, including but not limited to, the following provisions:

    a. Defendants represented that the Product has characteristics, uses, or benefits that it does not have, in violation of § 1770(a)(5);

    b. Defendants represented that the Product is of a particular standard, quality, or grade when, in fact, it is not, in violation of § 1770(a)(7);

    c. Defendants advertised its Products with the intent not to sell them as advertised, in violation of § 1770(a)(9); and,

    d. Defendants represent that their Product has been supplied in accordance with a previous representation, when it has not, in violation of § 1770(a)(16).

126. Defendants' unfair and/or deceptive acts or practices repeatedly occurred in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

127. Defendants knew, should have known, or were reckless in not knowing, that the Product contained substantially more Calories than Defendants claimed it did and, therefore, the Product is not suitable for its intended use.

128. Defendants were under a duty to Plaintiff and the Proposed Class members to disclose the Calorie content of the Product because:

a. the facts that Defendants misrepresented to, and concealed from, Plaintiff and the other Proposed Class members are material because a reasonable consumer would have considered (and in fact did consider) them to be important in deciding whether to purchase the Product or pay a lesser price for it; and,

b. the Caloric content of the Product poses a serious health and fitness consideration for consumers and affects the central utility of the Product for its intended use in weight management.

129. In failing to disclose the Calorie content, Defendants knowingly and intentionally concealed material facts in breach of their duty to disclose.

130. Plaintiff and the Proposed Class members have suffered injury in fact and actual damages resulting from Defendants' material misrepresentations and omissions, including purchasing a Product they otherwise would not have purchased, paying more for the Product than they otherwise would have paid, and being left with a Product of diminished value and utility because of the number of Calories it actually contains.

131. Had Plaintiff and the Proposed Class members known about the actual Calorie content in the Product, they would not have purchased the Product or would have paid less in doing so.

132. As a direct and proximate result of Defendants' unfair and deceptive conduct, Plaintiff and the Proposed Class members have been harmed and seek declaratory and injunctive relief, to be further determined at trial. [4]

---

[4] Under California Civil Code section 1782(a), Plaintiff is required to separately send, on behalf of the Class, a notice to Glanbia, via letter sent by certified mail, return receipt requested, to Defendants' principal place of business, advising Glanbia of its violations and that it must correct, replace, reimburse, or otherwise rectify the Product alleged to be in violation. Because Plaintiff has just recently sent the notice to Glanbia, she is currently only seeking injunctive relief under the CLRA. However, if Glanbia fails to timely and adequately respond to Plaintiff's notice, she will amend this Complaint to include a request for damages, pursuant to CLRA

## EIGHTH CAUSE OF ACTION

**(Against all Defendants for Violations of the California Unfair Competition Law, Cal. Civ. & Prof. Code §§ 17200-17210 ("UCL"))**

133.    Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

134.    Plaintiff brings this claim individually and on behalf of the Proposed Class.

135.    The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendants' conduct violates each of these prohibitions.

### Unlawful Conduct

136.    Defendants' conduct is unlawful because, as set forth herein, it violates the Song-Beverly Consumer Warranty Act and the CLRA, among other laws.

137.    Defendants are aware of the actual count of Calories contained in the Product, which renders it unfit for its intended purpose. Despite this knowledge, Defendants sold the Product to Plaintiff and the Proposed Class as a nutritional powder containing less than 10 Calories; refused to notify Plaintiff and the Proposed Class of the misrepresentation and omissions regarding the Product's actual Calorie content; and refused to remediate the Product or Product's labelling to accurately represent and reflect the true Calorie content contained therein.

### Unfair Conduct

138.    Defendants' conduct is unfair because it violated California's public policy, including that which is legislatively declared in the Song-Beverly Consumer Warranty Act, 1782(d).

requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. The actual Calorie content of the Product impedes ordinary usage for the intended purpose of supplementing muscle growth without adding Caloric intake.

139.    Defendants acted in an immoral, unethical, oppressive, and unscrupulous manner in at least the following respects:

a.    Selling Plaintiff and Proposed Class members a Product laden with Calories they claimed it lacked;

b.    Failing to disclose the true Caloric content of the Product, despite the opportunity to do so in numerous locations that people in the market for such products would be likely to encounter;

c.    Failing to exercise adequate quality control and due diligence over the Product before placing it on the market; and,

d.    Failing to acknowledge the scope and severity of the misrepresentation of actual Calories in the Product, which poses serious concerns for consumers in the market for products conducive to their weight loss, weight management, and other Calorie-related health concerns.

140.    The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling the misrepresented Product without providing adequate supplementary warnings about accurate Calorie content contained therein harms the public at large and is part of a common and uniform course of wrongful conduct.

141.    There are reasonably available alternatives that would further Defendants' business interests in increasing sales and preventing false warranty claims. For example, Defendants could have: (a) acknowledged the Calorie content through accurate labelling, and/or (b) adjusted serving size and/or formulation to meet the standards they claim to meet.

142.    The harm resulting to Plaintiff and Class members from Defendants' unfair conduct was not reasonably avoidable. Directly contrary to Defendants' misrepresentations and

omissions, the Product is laden with Calories and Defendants have failed to disclose this material fact to consumers, of which fact Defendants had exclusive knowledge through their own product development and testing. Plaintiff and the Proposed Class did not know of and had no reasonable means of discovering the Product's true Calorie content.

### Fraudulent Conduct

143. Defendants' conduct is fraudulent in violation of the UCL. Defendants' fraudulent acts include knowingly and intentionally concealing from Plaintiff and the Proposed Class the true Calorie content of the Product and falsely marketing and misrepresenting the Product as being a nutritional supplement powder conducive to muscle gain and repair without impacting weight or other Calorie-related health concerns.

144. Defendants' misrepresentations and omissions alleged herein caused Plaintiff and the Proposed Class to purchase the Product, or pay more than they would have, had Defendants disclosed accurate Calorie information.

145. At all relevant times, Defendants had a duty to disclose the Product's actual Calorie content because they had superior and exclusive knowledge thereof, which affects the central utility of the Product for its intended use, and because Defendants made representations about the quality and purpose of the Product while failing to disclose its Calorie content.

146. Accordingly, Plaintiff and the Proposed Class have suffered injuries in fact, including loss of money used to purchase the Product, as a result of Defendants' unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiff and the Proposed Class would not have purchased the Product at all, or at least not at the prices they paid.

147. Plaintiff and the Proposed Class seek appropriate relief under the UCL, including such orders as may be necessary (a) to enjoin Defendants from continuing their unlawful, unfair,

and fraudulent acts or practices, and (b) to restore Plaintiff and the Proposed Class any money Defendants acquired by their unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

### NINTH CAUSE OF ACTION

**(Against all Defendants for Unjust Enrichment)**

148.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

149.     Plaintiff brings this claim individually and on behalf of the Proposed Class.

150.     This claim is asserted in the alternative to the extent that there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against Defendants on the alleged basis of an absence of contractual privity or otherwise.

151.     By their wrongful acts and omissions described herein, including selling the Product with more than the "5 to 10 Calorie" maximum advertised, Defendants were unjustly enriched at the expense of Plaintiff and the Class.

152.     Plaintiff and Class members conferred a benefit upon Defendants by purchasing the Product at the full price. Under the circumstances, it would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained through their wrongful conduct in manufacturing, marketing, and selling the Product with the misrepresentation that the Product contains "5 to 10 Calories," or less, to Plaintiff and Class members.

153.     Plaintiff and Class members are entitled to damages in the amount Defendants were unjustly enriched, to be determined at trial.

## **PRAYER FOR RELIEF**

Plaintiff, individually, and on behalf of all others similarly situated only with respect to the class claims, prays for relief and judgment against Defendants, jointly and severally as follows:

    A.  Certify this case as a class action pursuant to California Code of Civil Procedure § 382, appoint the named Plaintiff to be the Class representative and the undersigned counsel to be Class Counsel;

    B.  Award Plaintiff and Class members all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

    C.  Award pre-judgment and post-judgment interest on such monetary relief;

    D.  Grant an order or orders requiring Defendants to adequately disclose the number of Calories in the Product and enjoining Defendants from misrepresenting that the Product contains a maximum of "5 to 10 Calories;"

    E.  Award reasonable attorney's fees and costs as permitted;

    F.  Grant such further relief that this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Class, hereby respectfully demands a trial by jury of all issues triable by right.

Dated: February 26, 2023                    Respectfully submitted,

                                  _____

                                    Robert Mackey, Esq
                                    Law Offices of Robert Mackey
                                    16320 Murphy Road
                                    Sonora, CA 95370
                                    Tel. (412) 370-9110
                                    bobmackeyesq@aol.com
                                    CA Bar No. 125961

Nicholas A. Migliaccio, Esquire *
Jason S. Rathod, Esquire *
412 H Street NE, Suite 302
Washington, DC 20002
Tel. (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

D. Aaron Rihn, Esquire*
Sara J. Watkins, Esquire*
Robert Peirce & Associates, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229
arihn@peircelaw.com
swatkins@peircelaw.com

*Attorneys for Plaintiff and Putative Class*

* pro hac vice admission to be sought

**Appendix 1.**



(vii) Dietary supplement of amino acids

## Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

**Amount Per Tablet**

| Calories | 15 |
|---|---|
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

*Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

Highlighted Supplement Facts displays 4.19g of AAs yielding 16.7 Calories, which in turn has been rounded to 5s when less than 50. Thus, the Calorie declaration is compliant at 15. https://www.fda.gov/media/99158/download.