O

# United States District Court
# Central District of California

| | |
|---|---|
| KERRY LAMONS,<br><br>  Plaintiff,<br><br>  v.<br><br>GLANBIA PERFORMANCE NUTRITION (NA), Inc. et al.,<br><br>  Defendants. | Case № 5:23-cv-00654-ODW (KKx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [20]** |

## I.   INTRODUCTION

Plaintiff Kerry Lamons brings this putative class action against Defendant Glanbia Performance Nutrition (NA) Inc. ("Glanbia"), alleging Glanbia purposely misrepresents the calorie contents of certain nutritional powders. (First. Am. Compl. ("FAC"), ECF No. 18.) Glanbia now moves to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 20-1.)  For the following reasons, the Court **GRANTS** Glanbia's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15

## II. BACKGROUND

On September 6, 2021, Lamons purchased one of Glanbia's products, Optimum Nutrition Essential Amino Energy + Electrolytes. (FAC ¶ 16.) Before purchasing this product, Lamons reviewed its label and other marketing materials, all of which claimed the product contains only "5 Calories." (*Id.*) However, independent laboratory testing revealed that this product contains approximately thirty-four calories per serving. (*Id.* ¶ 26.)

With this action, Lamons seeks to represent a class of individuals who purchased any of more than two dozen "substantial[ly] similar" Glanbia products, which Lamons collectively refers to as the "Product/Products" throughout the First Amended Complaint. (*Id.* ¶¶ 2, 3.) Lamons alleges that Glanbia purposely misbrands the calorie contents of these products by stating the products contain 0 calories, "5 to 10 Calories Per Serving with Zero Sugar," or omitting the term calories from labels. (*Id.* ¶ 2.) Lamons further alleges that "the actual Caloric range for all of the . . . products amounts to 35 to 55 Calories depending on formulation and use guidance." (*Id.* (emphasis omitted).)

On February 27, 2023, Lamons filed the initial Complaint in the Superior Court of the State of California for the County of Riverside. (Not. Removal ("NOR") Ex. 1 ("Compl."), ECF No. 1-1.). On April 14, 2023, Glanbia removed the action to this Court under the Class Action Fairness Act ("CAFA"). (NOR, ECF No. 1.) After Glanbia moved to dismiss the Complaint, Lamons amended her claims. In the First Amended Complaint, Lamons asserts seven causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) common law fraud; (4) violations of California's False Advertising Law, Cal. Bus. & Prof. Code. §§ 17500 *et seq.*; (5) violations of California's Legal Remedies Act, Cal. Civ. Code §§ 1750–1785; (6) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code. §§ 17200–17210; and (7) unjust enrichment. (FAC ¶¶ 47–128.)

Glanbia now moves to dismiss Lamons's claims. (Mot.) The Motion is fully briefed. (Opp'n, ECF No. 25; Reply, ECF No. 26.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy "the minimal notice pleading requirements of Rule 8(a)(2)"—"a short and plain statement of the claim." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to this standard, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). However, a court need not blindly accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Moreover, where a claim includes allegations of fraud, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

## IV. DISCUSSION

Glanbia moves to dismiss Lamons's claims on several bases, including that federal law preempts Lamons's claims. (Mot. 8–16.)

### A. Preemption

Pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal law preempts state law when "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). Regardless of the type of preemption the "purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted).

The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits the "misbranding of any food." 21 U.S.C. § 331(b). "To avoid a patchwork quilt of conflicting state labeling laws, the FDCA includes a preemption provision that establishes a national and uniform standard for certain labeling statements," including nutrition labeling. *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir. 2021). It provides that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)," which requires the inclusion of certain nutrition information on food labels. 21 U.S.C. §§ 343-1(a)(4), 343(q).

A state law is "not identical to the requirement of" a specified section if "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the [FDCA or applicable federal regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable provision" of the FDCA or

applicable federal regulation.[2]  21 C.F.R. § 100.1(c)(4).  Because the FDCA "preempts state-law requirements for claims about dietary supplements that differ from the FDCA's requirements, private plaintiffs may bring only actions to enforce violations of state laws imposing requirements identical to those contained in the FDCA."  *Hollins v. Walmart Inc.*, 67 F.4th 1011, 1016 (9th Cir. 2023) (internal citations and quotation marks omitted).  Therefore, "a state-law misbranding claim" that would allow "a state to impose requirements . . . different from those permitted under the FDCA . . . is preempted."  *Id.* (quoting *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 (9th Cir. 2018)).

"[W]here, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted."  *Mee v. I.A. Nutrition, Inc.*, No. C-14-5006 MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) (citing *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1313 (E.D. Cal. 2014)).  Under the FDCA, the nutrition label for food must provide the total number of calories in each serving size.  21 U.S.C. § 343(q)(1)(C).  The FDCA's implementing regulations provide that the total number of calories may be calculated using one of five methods ("Five Methods"):(1) the Atwater method; (2) a method that assigns 4, 4, and 9 calories per gram for protein, total carbohydrate, and total fat, respectively; (3) a method that assigns 4, 4, and 9 calories per gram for protein, total carbohydrate (less the amount of non-digestible carbohydrates and sugar alcohols), and total fat, respectively; (4) data for specific food factors for particular foods or ingredients approved by the Food and Drug Administration ("FDA"); and (5) bomb calorimetry.  24 C.F.R. § 101.9(c).  A "safe-harbor" provision allows the "total number of calories" measured by any of the Five Methods to be as much as 20% greater than the calorie content listed on a label.  *Id.* at § 101.9(g)(5).

---

[2] State common law causes of action are considered state "requirements" subject to preemption.  *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 325 (2008).

Here, Lamons alleges that she had "independent laboratory testing" conducted on "the Optimum Nutrition Product" and "the BSN Product," revealing each product contains far more calories than represented on the product's labels and advertising materials. (*Id.* at ¶ 26.) However, Lamons fails to allege any facts about the testing of these two products and how it complied with FDA regulations. Without more, Lamons fails to plausibly allege that the independent testing was FDA-compliant. *See Mee*, 2015 WL 2251303, at *4; *see also Anglin v. Edgewell Pers. Care Co.*, No. 4:18-cv-00639-NCC, 2018 WL 6434424, at *11 (E.D. Mo. Dec. 7, 2018) ("The *substance* of the allegations is particularly important in determining the *sufficiency* of those allegations in situations where, as here, the governing FDA regulation imposes a specific, lengthy, and very detailed methodology for testing the products." (emphasis in original)); *Curran v. Bayer Healthcare LLC*, No. 17 C 7930, 2018 WL 2431981, at *3 (N.D. Ill. May 30, 2018) ("[P]laintiff needs to include some facts about his testing procedure in order to make it plausible that defendant's label was not in compliance with the requirements of 21 C.F.R. § 201.327. . . . He needs to include at least some facts about his testing.").

Elsewhere in the First Amended Complaint, Lamons alleges in a conclusory fashion that she "analyzed the Product and evaluated it in accordance with each of the five methods provided by the FDA regulations and has concluded that every one of the five methods' results yield a caloric value that exceeds the claims on the Product's label by more than twenty percent (20%)." (FAC ¶ 8.) Here, although Lamons alleges the testing complied with FDA regulations, she again fails to allege any facts about the testing and how it complied with FDA regulations.[3] Furthermore, because Lamons defines the term "Product" to include more than two dozen individual products, (*see id.* ¶ 2), it is not clear what products she tested according to methods that comply with FDA regulations. Accordingly, the Court finds this allegation is conclusory and fails to

---

[3] Moreover, in the Opposition, Lamons appears to contradict this allegation, arguing that she "is not required to perform testing on twelve products at the pleading stage." (Opp'n 11.)

support a plausible conclusion that Lamons's testing of each of the products at issue complied with FDA regulations, let alone that each of the Five Methods revealed that each product is mislabeled under the FDCA.

The Court acknowledges that disagreement exists regarding whether specific compliance with FDA testing is a pleading requirement. *Compare Salazar*, 74 F. Supp. 3d at 1313 (dismissing claims as preempted where plaintiff failed to allege compliance with FDA testing protocols); *Mee*, 2015 WL 2251303, at *3–4 (same); *with Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *7 (E.D. Cal. Dec. 24, 2015) (finding allegations of testing methodology not required at pleading stage); *Clay v. Cytosport, Inc.*, No. 15-cv-165 L (DHB), 2015 WL 5007884, at *4 (S.D. Cal. Aug. 19, 2015) (same). However, the Court finds that requiring at least some facts to support a plausible inference of FDA-compliant testing is proper. This is particularly true where Lamons alleges Glanbia purposely misbrands its products in an effort to deceive customers, implicating the particularity pleading standard under Rule 9(b).

Accordingly, the Court **GRANTS** Glanbia's Motion to Dismiss.[4]

### B. Leave to Amend

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To the extent Lamons can amend her allegations in good faith to allege that independent testing of the identified products complied with the FDA regulations for caloric testing, Lamons may amend within twenty-one days of this Order.

---

[4] In light of the Court's ruling on the issue of preemption, the Court need not address Glanbia's additional arguments in support of dismissal.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Glanbia's Motion to Dismiss **WITH LEAVE TO AMEND** to allege FDA-compliant testing of the products at issue. (ECF No. 20.) If Lamons chooses to amend, the Second Amended Complaint is due no later than twenty-one days from the date of this Order, in which case Glanbia shall answer or otherwise respond within fourteen days of the filing. If Lamons does not timely amend, the dismissal shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend.

**IT IS SO ORDERED.**

August 31, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**